UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 14-2205-Turnoff

UNITED STATES OF AMERICA

v.

SANTIAGO YANES and
YAMILE SOROA,

       **Defendants.**
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  \_\_\_\_\_ Yes  \_\_X\_\_ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?  \_\_\_\_\_ Yes  \_\_X\_\_ No

                    Respectfully submitted,

                    WIFREDO A. FERRER
                    UNITED STATES ATTORNEY

BY: _____
        ROBERT J. BRADY, JR.
        Assistant United States Attorney
        District Court No. A5501703
        99 N. E. 4th Street
        Miami, Florida   33132-2111
        TEL (305) 961-9188
        FAX (305) 536-4699





AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>SANTIAGO YANES and<br>YAMILE SOROA,<br><br>*Defendant(s)* | )<br>)<br>)  Case No.  14-2205-Turnoff<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __1/23/2014 and 2/19/2014__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21, U.S.C., Sec. 846<br>Title 21, U.S.C., Sec. 841(a)(1) | Conspiracy to possess with intent to distribute five (5) grams or more of methamphetamine, a Schedule II controlled substance, its salts, isomers, and salts of its isomers.<br><br>Posession with intent to distribute five (5) grams or more of methamphetamine, a Schedule II controlled substance, its salts, isomers, and salts of its isomers. |

This criminal complaint is based on these facts:
See attached affidavit of DEA Special Agent Brian Warner

☑ Continued on the attached sheet.

*Complainant's signature*

Brian Warner, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __2/20/14__

City and state: __Miami, Florida__  __William C. Turnoff, U.S. Magistrate Judge__
*Printed name and title*

## AFFIDAVIT

I, Brian Warner, being first duly sworn, hereby depose and state as follows:

1. I am a Special Agent with the Drug Enforcement Administration (DEA) and have so been employed since September 2003. Prior to my employment with the DEA, I was a Police Officer with the New Orleans Police Department for approximately 6 years. I am currently assigned to DEA Miami Field Division, Enforcement Group 9. My duties include the investigation of the distribution of illicit drugs. I submit this affidavit based on information known to me personally from the investigation, as well as information obtained from other law enforcement officers who have investigated this matter, or individuals who have personal knowledge of the facts herein.

2. The information contained in this affidavit is submitted in support of the issuance of a criminal complaint against Santiago YANES and Yamile SOROA for violation of Title 21, United States Code, Sections 841(a)(1) and 846. As such, it does not contain all the information known regarding this investigation, but rather only those facts necessary to establish the requisite probable cause the YANES and SOROA violated Title 21, United States Code, Sections 841(a)(1) and 846.

3. On January 23, 2014, DEA agents were conducting surveillance outside YANES's residence, which is located at 1250 SW 4th Street, Apartment #2, Miami, Florida 33135 (hereinafter "the Premises"). At the time surveillance was established, agents saw YANES's vehicle parked outside the Premises. Agents also saw YANES outside in front of the Premises manipulating an unknown object. At approximately 2:01 p.m., agents observed males arrive in a vehicle that parked alongside SW 4th Street in front of the Premises. Two males

emerged from the vehicle and walked to the Premises where they stayed for approximately five minutes before returning to their car and departing the area. Soon after the two men departed the Premises, the City of Miami Police Department, in coordination with the DEA, conducted a traffic stop on their vehicle. During the traffic stop, the police officer seized a personal amount of suspected methamphetamine from the male who was driving the vehicle. The suspected methamphetamine was contained inside a small plastic black/gray "baggie" that your Affiant knows, based on training and experience, is consistent with retail drug distribution. Furthermore, based on your Affiant's training and experience, the contents of the baggie appeared to be methamphetamine. The male driver admitted that he had just purchased the suspected methamphetamine from YANES at the Premises for $50.00. The male driver admitted to being a methamphetamine user who previously purchased personal-use amounts of methamphetamine from YANES for $50.00

4. On January 23, 2014, the male driver agreed to allow the agents to search and analyze the log data and text messages contained in his cellular phone. During this analysis, a DEA agent noted that the male driver had been in telephone contact with (305) 305-1855 (YANES's cellular telephone number) prior to obtaining the suspected methamphetamine from the Premises on January 23, 2014. The male driver's cellular phone listed the name "Santiago" as the contact associated with telephone number (305) 305-1855. Your Affiant also reviewed the text message communications between the male driver and YANES that occurred before the male driver obtained the suspected methamphetamine from the Premises on January 23, 2014. The content of these text message communications indicated YANES was awaiting the male driver's arrival at the Premises.

5. On February 7, 2014, a Confidential Source (CS) and YANES spoke over the telephone for the purpose of arranging the CS's purchase of methamphetamine from YANES. During the call, YANES indicated the CS could meet YANES at YANES's residence (i.e., the Premises) around lunch time. DEA agents then provided the CS with $50.00 in Official Advanced Funds ("OAF") to purchase illegal drugs from YANES. Agents also provided the CS electronic audio and video recording devices that would enable the CS to record the anticipated drug transaction between YANES and the CS. The CS then drove to the Premises where the CS entered and purchased $50.00 worth of suspected methamphetamine from YANES. After the CS purchased the suspected methamphetamine, agents seized the suspected contraband, which was packaged inside a small black/gray plastic "baggie." A field test of the contents of this "baggie" yielded positive results for methamphetamine.

6. On February 18, 2014, DEA agents successfully obtained a Federal search warrant for the Premises. On February 19, 2014, agents executed the search warrant at the Premises. During the search, agents found suspected methamphetamine on a dresser and inside a safe located in a bedroom inside the Premises. A field test conducted on this suspected contraband yielded positive results for methamphetamine. In addition to the methamphetamine seized at the Premises, the agents found two electronic scales and a package containing small plastic baggies, which, based on your Affiant's training and experience, is consistent with distribution of illegal drugs. The agents arrested YANES and advised him of his *Miranda* warnings. YANES waived his *Miranda* rights, via a written waiver form, and agreed to speak to the agents. YANES informed the agents that his supplier for methamphetamine was an Hispanic female he knew as "Yamiel." YANES said "Yamiel" had been his sole methamphetamine source of supply over the past year. YANES identified "Yamiel's" contact information in his

cellular phone. This contact was listed as "Yami." According to YANES, he would text message "Yamiel" when he needed methamphetamine and would subsequently either meet her or she would deliver the methamphetamine to the Premises. YANES said he typically ordered four "eight balls" (an "eight ball" is 1/8 ounce) of methamphetamine from "Yamiel" for a total price of $900 (U.S. currency). Based on your Affiant's training and experience, four "eight balls" of methamphetamine is a quantity consistent with distribution, and not personal use.

7. At approximately 1:50 p.m., DEA agents, acting in an undercover capacity, used YANES's cellular telephone to send a text message to "Yamiel." Specifically, the agents inquired, "Hey can u come by soon? No mas aqui." Approximately an hour later, "Yamiel" replied by text message, "Yes." Through a series of subsequent text-message exchanges, "Yamiel" agreed to meet at the Premises later that night. At approximately 7:30 p.m., the agents observed a female, subsequently identified as Yamile SOROA, park her vehicle, approach the Premises, and attempt to gain entry. At that moment, the agents approached SOROA, identified themselves as law-enforcement officers, and explained they were conducting a narcotics investigation. SOROA responded that she was at the Premises merely to collect money from YANES. According to SOROA, YANES owed her money in relation to certain costs incurred from a renovation of the Premises. SOROA said she used drugs, but did not sell drugs. SOROA subsequently consented to a search of both her person and her vehicle. SOROA was wearing knee-high boots, which she removed upon the agents' request. Upon inspecting the boots, an agent noticed one boot contained a clear plastic bottle. This plastic bottle contained approximately one ounce of suspected methamphetamine. A portion of the methamphetamine previously seized at the Premises, during the execution of the search warrant, was contained in an identical clear plastic bottle. Upon finding the clear plastic bottle in the boot, the agents

arrested SOROA. A subsequent field test of the substance found in this clear plastic bottle yielded positive results for methamphetamine. A search of SOROA's cellular phone revealed the text messages between the agents, who were previously using YANES's cellular phone, and "Yamiel" to arrange the meeting that ultimately occurred at the Premises. The person with whom these text messages were exchanged on SOROA's cellular phone was identified as "Santy Yanes" in SOROA's cellular phone.

8. Based on the foregoing facts, your Affiant submits that probable cause exists to believe that YANES and SOROA did knowingly and willfully conspire to possess methamphetamine with the intent to distribute, and knowingly and intentionally possessed methamphetamine with the intent to distribute, in violation of Title 21, United States Code, Sections 846 and 841(a)(1), respectively. The total quantity of methamphetamine seized in this matter was approximately 39 grams.

FURTHER YOUR AFFIANT SAYETH NAUGHT

_____
BRIAN WARNER
Special Agent
U.S. Drug Enforcement Administration

Sworn to and subscribed before me
this 20th day of February, 2014.

_____
WILLIAM C. TURNOFF
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA